Swartz vs. Page.

| 13 | 603 |
| 105 | 179 |

| 13 | 603 |
| 173 | ²460 |

## JACOB SWARTZ vs. DANIEL D. PAGE.

1. The title of the inhabitants of St. Louis, to the *commons* adjoining the town, under the act of Congress of June 13, 1812, must prevail over a title confirmed by the act of Congress of July 4, 1836.

2. A deed regular on its face, from the city of St. Louis under its corporate seal, for a part of the *commons*, executed under the provisions of an act of the general assembly of this state, approved March 18, 1835, is *prima facia* evidence, that all the prerequisites of that act required before a sale, have been complied with. Nor can a claimant be allowed to urge that the prerequisites have not been complied with unless he holds a conflicting title from the city.

APPEAL from St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

This was an action of ejectment, brought by Page against Swartz, to recover a lot lying

within the St. Louis commons, and also within the confirmation of James Mackey or his legal representatives by the act of 4th July, 1836.

At the trial, the then plaintiff, gave in evidence a duly certified plat and certificate of survey made under the authority of the United States, being survey No. 3125, and which it was agreed truly represents the out boundaries of the commons confirmed to the inhabitants of the town of St. Louis by the act of Congress, 13th June, 1812, and relinquished to the said inhabitants in full, properly according to their several rights therein, to be regulated according to the laws of the State of Missouri, by an act of Congress, approved 27th January, 1831.

The plaintiff then offered in evidence an instrument purporting to be the deed of the Mayor, Aldermen and citizens of the city of St. Louis to George Morton bearing date the 10th May, 1836. Executed by the Mayor and Register of the city of St Louis, signing their names and causing the common seal of said city to be affixed on the 10th April, 1836, the instrument is signed,                                  JOHN F. DARBY,

GEORGE MORTON,    [seal.]

The seal of the corporation is affixed apposite the——and the words "By the Mayor" signed, J. A. Wherry, Register of the city of St. Louis.

This instrument commences: This deed (being a compromise sale) made this 10th day of May, in the year of our Lord, 1836, between the Mayor, Aldermen and citizens of the city of St. Louis of the county of St. Louis and State of Missouri, party of the first part, and George Morton of the city, county and State aforesaid, of the second part, witnesseth. that the said party of the first part in consideration of $900 in hand paid by George Morton, have bargained, sold and quit claimed, and by these presents, do bargain, sell and quit claim, unto said George Morton his heirs and assigns forever, all that tract of land, &c., setting out a minute description, which may be stated in general terms, to be bounded north by Chouteau's mill tract, west by the west line of lot No. 6, in the St. Louis commons as surveyed by Chas. De Ward, south by the center of Park avenue, and east by the east line of St. Louis commons, embracing lots number two, three, four, five and six, containing forty five acres, exclusive of the avenues bounding and running through the land surveyed. This description is followed by the Habendcen, and a special covenant limiting the warranty against the grantors and persons claiming under them.

The deed appears to have been acknowledged before a justice of the peace of St. Louis county, by John F. Darby and George Morton, who the justice certifies "are personally known to him to be the persons whose names are subscribed to the instrument," on the 10th of May, 1836. It was recorded the same day.

The defendant objected to reading the deed in evidence on the following grounds:

First. That it did not appear that any election was held as required by law, nor was there any evidence that a majority of the owners had consented to the sale of the commons.

Second. That it does not appear that George Morton, at or before the date of the deed had any claim within the commons conflicting with the claim of the city of St. Louis.

Third. That there is no evidence of any settlement or compromise made by the Mayor and board of Aldermen of the said city.

Fourth. That the deed was not made by the Mayor and board of Aldermen, or that the same had been authorized before or ratified after it was made, by the board of Aldermen.

The court overruled the objection and allowed the deed to be read to the jury, to which decision the defendant excepted.

The deed was then read, and the defendant admitted that the land therein described is wholly within the survey No. 3125, and is part of the commons confirmed and relinquished to the inhabitants of St. Louis. The plaintiff then proved that all the right, title, estate and interest of George Morton in the land described, was vested in the plaintiff by a deed made by the sheriff of St. Louis county, bearing date the 15th March, 1845. That the defendant was at the commencement of this suit in possession of a small portion of the land described in the deed just mentioned, and gave evidence tending to prove damages sustained, and the monthly value of the part in possession of the defendant.

The plaintiff admitted that no part of survey No. 3125, or of the commons of St. Louis was within the limits of the city of St. Louis, as it stood incorporated at any time prior to the 31st March, 1841.

The defendant then read in evidence so much of the report of the recorder and commissioners laid before and confirmed by an act of 4th July, 1836, as relates to the claim No. 54 of James Mackey, claiming 200 and more arpents, under a concession of 9th Oct. 1799, for two hundred and some arpents bounded on the north by land of August Chouteau, south by that of Soulard east by the public road going from St. Louis to Carondelet, and west by the domain and a survey certified by Antoine Soulard, 17 Dec. 1802, confirmed to James Mackey, or his legal representatives according to the concession, and it was agreed that the land in controversy lies within the concession, survey and confirmation.

The defendant then read in evidence:

1. A deed executed by Isabella Mackey executrix of James Mackey deceased, (in pursuance of a power contained in the will of said Mackey,) whereby she conveyed to Arund Rutgers all the estate and interest of the testator at the time of his death in and to a parcel of land containing 33 arpents French measure described by metes and bounds, "which include the land in controversy" being part of the land granted to and surveyed by James Mackey as before stated, which deed bears date the 5th May, 1825.

2. A deed of the sheriff of St. Louis county, dated the 18th of January, 1825, under and by virtue of judgments and executions against the executrix of James Mackey deceased, conveying to Abner Blaisdell a tract of land containing "fifteen acres and nineteen hundredths of an acre," bounded, eastwardly by lands of Arund Rutgers, north by land of Chouteau, west by lot No. 3, on a plat referred to, and south by Antoine Soulard deceased, which land is admitted to be within the commons of St. Louis, and also within the concession and survey in favor of James Mackey, "and does not include any part of the land in controversy."

3. A deed dated 9th May, 1828, from said Blaisdale and wife conveying to James W. White and Michael Gorman, the land described in the deed last above mentioned.

4. A deed from said White and Gorman, dated 9th November, 1830, conveying the same land to George Morton.

The defendant then read to the jury a transcript of the records, of the proceedings of the board of Aldermen of the city of St. Louis, by which it appears that on the 2d April, 1836, the committee on the commons made a report which was adopted. The report is set out *in extenso*. The clause which relates to the claimants under Mackey is in these words:

"They have also had the petition of P. M. under consideration, and would respectfully recommend to the board a compromise predicated on the following basis: First, the Mayor and board of Aldermen of the city of St. Louis will convey all their right and title to the land within the survey of the commons, "known as the Mackey claim to the representatives of said Mackey," for and in consideration of twenty dollars per acre, the purchasers to be placed on the same grounds with regard to payments as the other purchasers of land within the commons with the additional privilege of paying the principal of said purchase whenever they may think proper to do so."

The report closes in these words: "To bring about a definite action by your honorable body on the several recommendations in the above report, the committee recommends the adoption of the following resolutions:"

The first resolution relates to a conveyance of the United States, of seven acres of land for $300. The 4th and last proposes that the members of the committee shall have $5 per day, each for their services. The others being the second and third of the series, are in these words:

Resolved, That P. M. Dillon, George Morton and Frederick Dent, being the legal representatives of "James Mackey," shall receive deeds for the "lands claimed by them," and which is within the survey of the commons by their paying twenty dollars per acre therefor, and that they have the privilege of paying the principal at the time of executing the deeds, "or at any time hereafter, which may suit their convenience within ten years."

Resolved, That the deeds to be executed by virtue of the power given the board to make

compromises, express that it is a compromise sale, and that persons so compromising be entitled to pay the amount agreed upon down, or avail themselves of the advantages advertised in the notice of the sale of the commons.

The defendant proved by the register of the city and keeper of the records of the board of aldermen, that the transcript includes all the proceedings of the board of aldermen in relation to the claim of George Morton and other persons, claiming under James Mackey within the commons.

The defendant then offered to prove by the testimony of the members of the board of aldermen, who were members of the committee on the commons, and were produced as witnesses, that George Morton did not claim before the committee or the board, before or at the time of the passage of the resolution contained in the transcript, any part of the land in controversy; that he claimed only the parcel described in the deed from White and Gorman to him, read in evidence by the defendant; that no other claim of said Morton within the commons was known to the board of aldermen, and that the resolution of the board referred to the claim theretofore made and no other; that said Morton was a member of the board of aldermen and of the committee on commons, and was present acting as a member of the board when the report of the committee was ¡adopted; and one of said witnesses being produced and sworn, the court could not permit him to be examined or hear any testimony touching the facts so offered to be proved—to which decision exception was taken.

The defendant read in evidence the act of the general assembly incorporating the inhabitants of St. Louis, approved 9th December, 1822, which is to be used in the supreme court as if set forth at large.

No other evidence material to the issue was given.

The court, at the request of the plaintiff, instructed the jury as follows :

If the jury find from the evidence that the land in controversy is embraced within the commons of the town of St. Louis, as confirmed by the act of 13th June, 1812, and as said common was surveyed under the authority of the United States according to the survey thereof given in evidence, and that it is included within the land described in the deed from the mayor, aldermen and citizens of the city of St. Louis to George Morton; that such deed was executed as it purports to have been, and the same land is included within the land conveyed in the deed of the sheriff to the plaintiff, then the title of the plaintiff is superior in law to the title under the confirmation to James Mackey by the act of Congress of the 4th July, 1846, and if they find that the defendant was in possession of the land in controversy at the commencement of this suit, they will find for the plaintiff.

To which the defendant excepted, and prayed the court to instruct the jury as follows :

1. Th ּ deed dated the 10th May, 1836, signed by John F. Darby, then mayor of the city of St. Louis, and George Morton, given in evidence by the plaintiff, does not operate to pass the title of the inhabitants of St. Louis to the land therein described to George Morton.

2. Unless the jury find from the evidence that George Morton, before the 10th May, 1836, had a claim to the land described in the deed of that date, and that the mayor and board of aldermen did settle and compromise said claim, and authorize the execution of said deed, then George Morton acquired no title to the land in controversy by virtue of said deed.

3. The deed of 10th May, 1836, furnishes no evidence that George Morton had a claim to the land therein mentioned conflicting with the inhabitants of St. Louis, or that his claim had been compromised by the mayor and board of aldermen.

4. Unless the jury find from the evidence that prior to the 10th May, 1836, a majority of the owners of the commons qualified to vote, consented to the sale thereof in the manner provided by an act of the general assembly of the state of Missouri, entitled an act to authorize the sale of the St. Louis commons, approved the 18th of March, 1835, the deed executed by John F. Darby and George Morton given in evidence in this case is void.

5. If the jury find from the evidence that prior to 10th May, 1836, George Morton had no claim to the land in controversy, and that the board of aldermen of the city of St. Louis did not authorize or assent to the conveyance of said land by the mayor, then the deed executed

by the mayor and said Morton did not pass the title of the inhabitants of St. Louis in said land.

6. If the jury is satisfied by the evidence, that the proceedings of the board of aldermen read in evidence by the defendant, exhibit all the acts of the board of aldermen in relation to the claim of George Morton, under James Mackey, in the common of St. Louis, and that no claim then made by said Morton included any part of the land in controversy, then the mayor was not authorized to convey said land.

7. If the jury find from the evidence that before and at the time of the passage of the resolution in relation to the claims under James Mackey, George Morton was a claimant to a parcel of the tract originally granted to Mackey, and that such parcel was designated by metes and bounds, not including the land in controversy, or any part thereof, then the resolutions are to be construed as a compromise only of the claim actually made, and to authorize a conveyance of the land so claimed and no other; and the deed executed by the mayor does not operate to convey any title to the land in controversy.

8. If the jury find from the evidence that the tract of land described in the deed of the 10th May, 1836, is part of the land originally granted to James Mackey, and within the St. Louis commons; that George Morton had a claim to a parcel of said land, designated by metes and bounds, which excluded the land in controversy; that he had not before the 2nd April, 1836, any other claim as representative of James Mackey within the commons, then the resolutions of the board of aldermen of that date authorize a conveyance only of the parcel so claimed, and if the jury also find that there was no other act, resolution or proceeding of the board of aldermen, relating to any claim of George Morton within the commons, then the aforesaid deed of 10th May, 1836, does not operate to convey the land in controversy, or any part thereof.

9. The resolution and proceedings of the board of aldermen, given in evidence, do not authorize the conveyance to George Morton of any part of the commons to which he had no claim, or which he did not claim as representative of James Mackey. If therefore there was no other acts or proceedings of the board of aldermen authorizing a conveyance to said Morton of lands in the commons, the authority of the Mayor was limited to the parcel actually claimed, and did not authorize him to convey to said Morton other lands not embraced within any claim made by the said Morton or known to the board of aldermen.

10. The Mayor and board of aldermen had not on the 10th May, 1836, any power or authority to sell and convey any portion of the St. Louis commons at private sale, nor had they authority to convey any parcel of said commons, which was not claimed by any person adversely to the inhabitants of St. Louis, or purchased at public sale.

11. The Mayor of the city of St. Louis had not, on the 10th May, 1836, or before, any power or authority to convey to any person any part of the commons which had not been sold at public sale without the persons assent or subsequent ratification of the board of aldermen.

12. The Mayor and board of aldermen had no power or authority by way of settlement or compromise, or otherwise, to settle and convey lands within the commons to which there was no claim conflicting with the claim of the inhabitants of St. Louis.

13. If the jury find from the evidence that prior to 10th May, 1836, George Morton had not, and that Arund Rutgers or his representatives had, a claim to the land in controversy under James Mackey, and that the proceedings of the board of aldermen, given in evidence by the defendant, exhibits all the acts, resolutions and proceedings of the said board relating to the claims under James Mackey; then the said deed of the 10th May, 1836, under which the plaintiff claims, does not operate to convey the land in controversy to him.

14. The Mayor of the city of St. Louis had not authority to convey lands in the commons to persons who had not any claim thereto, to the exclusion of those who had claims conflicting with the claim of the inhabitants of St Louis, and therefore the deed of 10th May, 1836, does not operate to vest in George Morton a title to the land in controversy, if it ap-

pears to the satisfaction of the jury that he had no claim to said land, and that Arund Rutgers and his heirs were the legal representatives of Mackey in respect to said land.

Which instructions, and each of them, the court refused to give, and the defendant excepted to the decision.

A verdict was rendered for the plaintiff, and in due time the defendant filed a motion for a new trial—assigning as reasons:

1. The admission of evidence which ought to have been excluded. 2. The exclusion of evidence that ought to have been admitted. 3. Misdirection in giving instructions. 4. Error in refusing instructions prayed by the defendant. 5. That the verdict is against law and evidence.

The court overruled the motion, and the defendant excepted.

Judgment being rendered for the plaintiff the defendant appealed.

## Geyer, for appellant.

The act of Congress of the 13th June, 1812, operates as a grant of the commons to the inhabitants of St. Louis in full property, if they are capable of taking by that description, and vests no interest in any municipal corporation.

It has been repeatedly held by this court, and by the supreme court of the United States, that the act of 1812 is a grant vesting the title by its own force, leaving the extent and boundaries to be judicially ascertained by evidence *aliunde*. Bird vs. Montgomery, 6 Mo. R. 510; Mackey vs. Dillon, 7 Mo. Rep. 7; S. C. 4th How'd, 448; Chouteau vs. Eckhart, 7 Mo. R. 16, S. C.; 2 How'd, 376; Les Bois vs. Brammell, 4 How'd, 449.

If therefore the grant to the inhabitants of St. Louis is void for uncertainty, the title of the appellee fails altogether since the title could not vest in the corporation by the terms of the grant.

II. If the title became vested by the act of 13th June 1812, it could not afterwards be in any way affected by the legislation of Congress. On that day the property became exclusively subject to the laws of the State of Missouri. Congress could not delegate to the Legislature of Missouri any authority to dispose of the property, and consequently no new power was conferred by the act of 27th January, 1831.

The United States having been divested of all interest by the grant, could not exercise any control over the subject. City of N. O. vs. Cumas, 9 Peters, 224; Fletcher vs. Peck, 6 Cran. 87. It is an acknowledged principle of law, that the title and disposition of real property is exclusively the subject of the laws of the country where it is situated, which can alone prescribe the mode by which a title to it can pass from one person to another. Kerr vs. *Deusces of Moon*, 9 Wheat. 565, (5 Con. Rep. 882;) McC. et al. vs. Sul. et al., 10 Wheat. 192, (6 C. R. 71.)

III. Private property is not subject to the will and caprice of the Legislature. That government can scarcely be deemed to be free where the rights of property are left solely dependant upon the will of the Legislative body without any restraint. The fundamental maxims of free government require that the rights of private property should be held sacred—at least no court of justice would be justified in assuming that the power to violate or disregard them lurked under any general grant of legislative authority. Wilkinson vs. Leland, 2d Peters, 657; Van Haus Lessee vs. Dorrance, 2 Dall. 304; Society, &c. vs. New Haven, 8 Wheaton 464.

The act of 1835 is not to be construed into a power, to the mayor and aldermen to dispose of the property of the inhabitants in the commons at pleasure, if such construction may be avoided, and another adopted which is consistent with the constitution and the vested rights of the owners of the property. The act is in derogation of the common law, and is to be construed strictly. Sharp vs. Spier, 4 Hill 76; Sharp vs. John. ib. 92; Taylor vs. Porter ib. 140; Quachenbust vs. Danks, 1 Den. 128; 7 Mass. 523; Dash vs. Dankleek, 7 Johns. Rep. 477

Swartz vs. Page.

Sayre vs. Wesner, 7 Wend. 661; Garrell vs. Doe, 1 Scammer 337; Commonwealth vs. Jarrot, 7 S. & R. 460; case of St. Mary's Church, ib. 517.

IV. A power of sale, like all other powers, can be exercised only in the mode, and subject to the conditions, if any, prescribed by the instrument creating the power. Wright vs. Wakeford, 17 Vesey, 454. Thus if a sale be directed to be made with the consent of a tenant for life, or of any other person, the consent must be obtained before the exercise of the power. Mortlock vs. Buller, 10 Vesey 308.

Where there is a condition precedent to the exercise of a power, no sale under the power can by possibility be sustained, unless the condition be performed. 2 S. & P. 48, 9th Ed., Deke vs. Recks. Cro. Ca. 335; 2 S. vs. Pow. 497, 6 Ed. Doe vs. Master, 4 T. R. 39; Little vs. Frost, 3 Mass. 106; H. on trustees 478.

V. The deed executed by the Mayor furnishes no evidence and still less constructive proof of a compromise made in pursuance of the power. It does not even recite the existence of any authority from the board of aldermen to make the deed, or that a compromise was made by the mayor and board of aldermen, by which the land described and purported to be conveyed was to be conveyed to any person. Little vs. Frost, 3 Mass. 106; Galer vs. Commissioners, 1 B. 354.

VI. It is proved by the records of the proceedings of the board of aldermen that no such compromise was made—but in fact the only conveyance authorized did not embrace the land in controversy, which was at the time claimed by another person.

VII. The evidence offered by the defendant was competent and ought to have been admitted. 2 Starkie, 1020, 1021, 24-25-26, 1044. If the deed is prima facie evidence of the authority to execute it, yet it was competent for the defendant below to rebut the presumption by showing that the aldermen did not assent to or authorize the deed. The Mayor, &c., Colchester vs. Lanton, 1 Vesey & B. 245; case of St. Mary's church, 7 S. & R. 530.

GAMBLE & BATES, for appellee.

1. The deed of the corporation of St. Louis under the corporate seal implies the authority of the officer executing it. 1 Ky., 268; 15 Wendall 25; 6 S. and R., 12; 3 Halst, 183; 4 Yerger, 7.

2. The — section of the act of January, 1835, gives full power to compromise and settle with adverse claimants in any mode for any consideration, either by receiving payment from them for land or making payment to them for their claims and that in money or land, or by any other mode of adjustment, and therefore it was not necessary to the validity of a compromise that the party receiving a deed should have had an adverse claim to the land conveyed to him.

3. There being no evidence of the extent of Dillon's or Dent's claims, the resolutions of the board would authorize a conveyance to Morton of any land embraced by the claim of either of those individuals if made with their assent either written or verbal.

4. As the act requires no particular evidence of an adverse claim in order to a compromise, Page as the purchaser of Morton's title under judgment and execution is not bound to go behind the deed to Morton to show what adverse claim, Morton had, nor is such adverse claim a part of his title.

NAPTON, J., delivered the opinion of the court.

There is no question, but that the instruction given by the court for the plaintiff was correct, so far as it determined the relative value of the Mackay claims and the title of the inhabitants of St. Louis to the St. Louis common.

Whether Page, the plaintiff, or Morton from whom he purchased, has the legal title from the city, is the only matter controverted. Morton has a deed regular on its face from the city of St. Louis under its corporate seal. His title is so far *prima facie* good. The defendant proposed, on the trial, to go behind this deed and attack its validity in various ways.

1. He contended, that the plaintiff must show that a majority of, the citizens of St. Louis had voted for the sale of the commons under the act of our legislature in 1835.

2. He denies the constitutionality of the act of the legislature in 1835, authorizing the sale of the commons.

3. He denies that the mayor and aldermen had any authority to make this deed. For this purpose he produces the Mackay title—a deed from .Mackay's widow to one Arund Rutgers, in 1825, for 23 arpens of this claim, including the land in controversy. A sheriff's deed to one Blaisdell, by virtue of an execution against Makay's executrix, containing 15 19-000 acres, which last mentioned tract does not include any part of the land in controversy; a deed from Blaisdell and wife, to White & Gorman, and a deed from White & Gorman to George Morton. The records of the proceedings of the board of aldermen of St. Louis are then produced, showing, that on the 2d April, 1836, the committee on the commons reported a recommendation of a compromise of the Mackay claim. The basis of said compromise was for the city to convey their title to Mackay's representatives, upon the latter paying $20 per acre. A resolution of the board is accordingly adopted as follows: "Resolved, That P. M. Dillon, George Morton and Fred. Dent, being the legal representatives of J. Mackay, shall receive deeds for the lands claimed by them, within the commons, by paying $20 per acre, &c." The defendant then offered/to prove that Morton had no claim, and made none before the board or committee, except the one he bought of White & Gorman.

It seems, that Morton's deed from the city embraces the Rutgers tract, as well as the 15 acres he claimed through Blaisdell. The object of the testimony was therefore, to show that the deed of the city was unauthorized—that the corporate authorities had no power to sell under the law unless at public sale, except by way of compromise, and it was contended that the transaction with Morton was not a *bona fide* compromise, within the powers of the city authorities.

The first point, we are clear, is not tenable. The city of St. Louis in disposing of her commons under the act of our legislature does not occupy the position of a mere trustee. The rules which govern this

class of agents do not apply to the city authorities. A deed by a trustee, under a a special power, must recite the power, and show on its face that the contingency has happened which would authorize the sale. The municipal corporation of St. Louis occupies a different position, more analagous to that which the United States does as a great landed proprietor. When a deed from the United States is produced, the grantee is not bound to show that all the prerequisites of the law have been complied with. It is not incumbent on him, when he produces his patent, to prove that the land was surveyed—and that it was duly proclaimed for sale by the president—and that it was offered for sale at public auction. These are preliminaries to a patent which the law requires, but the production of the patent raises the presumption that these preliminary acts have been duly performed. Nor will our courts hear any objection from the opposite party, on account of a defect in these prior proceedings, unless that party holds a conflicting title from the same source. If the United States are satified, we have not considered it our duty to permit a mere trespasser to complain.

The objection founded on the denial of the power of the legislature of Missouri to pass the act of 1835, was not pressed in the argument and we shall not therefore go into that branch of the case.

The principal difficulty in this case is in determining how far a stranger can be permitted to enquire into the validity of the deed which the corporate authorities of St. Louis have made to Morton. One of two propositions seems to be the result of the proof offered. Either the city of St. Louis still owns this Rutgers tract of 23 arpents, or Morton has the legal title.

If the effect of the proof is to show title in the city, we think it was properly excluded, upon the same principle which has authorized the rejection of such evidence in attacking a patent from the United States.

If Morton has the legal title, the equitable rights of Rutgers' heirs are not a proper subject of investigation in this action.

The construction which has been urged at the bar to the recorded action of the city authorities is not necessarily involved in this judgment. Neither the resolution of the board of aldermen, or the report of the committee upon which it was based, intended to authorize the relinquishment of the city title to any person who had no claim. To give Morton all the land he claimed, and 15 acres which he did not claim, was not in my opinion, a compromise of claim within the true intent of the resolution. Such a course was virtually selling to Morton 15 acres in the common at $20 per acre, at private sale. This the board of aldermen clearly had no power to do.

---

---

But on the other hand Morton may have represented Rutgers or his heirs, by purchase or private arrangement, and if so, his legal title would be but a trust estate, so far as the Rutgers tract is concerned. Whether this tract was included in Morton's deed with the consent of the owners or by their subsequent ratification, it is manifest that a court of equity would compel a conveyance upon just terms. But the rights of the parties, upon such a hypothesis, could not be settled in an action of ejectment. Morton has paid his $20 per acre for the whole tract, including the Rutgers claim. If he be held a trustee for the heirs of Rutgers, they would of course have to compensate him for his advances.

Morton undoubtedly had a claim for 15 19-100 acres, and was entitled under the resolution to a deed to this extent. To hold the deed void at law would sweep away the whole title, and leave it in the city, who is not a party to this ejectment.

Judgment affirmed.