JULIEN CHOUQUETTE *et al.*, Respondents, *v.* ANTOINE BARADA *et al.*, Appellants.

33 249
97 536

*Conveyance—Corporation.*—A municipal corporation having power by its charter to dispose of its lands, its deed therefor will be presumed to have been executed in pursuance of the power, and it is unnecessary for the grantor to show any special authority by resolution or ordinance.

*Estoppel.*—A party cannot set up and at the same time deny the title under which he holds as against his adversary having claim under the same title.

*Appeal from St. Louis Land Court.*

This was an action of ejectment, commenced on 28th January, 1854, to recover a lot of ground in Carondelet,

having a front of 170 feet on Fourth street by 270 feet, more or less, in depth, bounded on the north by lot of M. S. Cerré and John B. Sarpy, east by Fourth street, south by a county road, and west by Fifth street.

The trial in the court below resulted in a verdict and judgment in favor of plaintiffs for the land and $336 damages. This judgment was rendered 3d November, 1859.

At the trial the plaintiffs gave in evidence the following agreement:

"It is agreed that the land in controversy is within the common of Carondelet. It is also admitted that the pamphlet purporting to contain the ordinances of the city of Carondelet from one (1) to sixty (60) inclusive may be read, as to ordinance No. 57, in the same manner and with like effect as a certified copy of said ordinance No. 57. Also, upon the offer of any sheriff's deed by the defendants, no objection to its admission shall be made for the absence of the record of the suits out of which it purports to arise, but the same may be admitted if in due form."

The plaintiff then read ordinance 57, approved March 18, 1852, and also the following resolution of the city council of Carondelet:

"Resolved, that under the provisions of ordinance No. 57, approved March 18, 1852, the mayor is hereby authorized to execute a deed to Antoine Chouquette and others, petitioners, for a lot of ground described in their petition and situated west of Fourth street, containing 170 feet front by 270 feet in depth, more or less, bounded north by lots claimed by M. S. Cerré and John B. Sarpy, east by Fourth street, south by a county road, and west by Fifth street, provided," &c.

An objection was made by the defendants to the reading of this resolution.

The plaintiffs then read in evidence the deed of the City of Carondelet conveying to Antoine Motier, Julien Chouquette and Victoire his wife, Charles Motier, and Ophelia, wife of Joseph H. Vien, the land in controversy. This deed was dated August 14, 1852.

The defendants objected to the reading of this deed, because no evidence of authority for making it was shown. The genuineness of the signatures of the officers and of the seal of the corporation affixed thereto were admitted. The court overruled the objection. It was admitted that Antoine Motier, Sen., died in the early part of March, 1834, and that his widow Felicité was buried 11th September, 1852.

The plaintiff then showed that Antoine Motier left him surviving the following children of himself and Felicité Motier, viz: Antoine, (1,) Charles, (2,) John Baptiste, (3,) Andrew, (4,) Victoire, married to Julien Chouquette, (5,) Isabella Elizabeth, since married to Michael Garci, (6,) Ophelia, since married to Joseph N. Vien, (7,) and Louis, (8.) Of these, Antoine, the oldest, was living at Stringtown, married; Charles was on the Rocky Mountains; Victoire was married and living with her husband in Carondelet; all the rest lived with their mother on the premises when the old man died; as they married they moved away; Louis, the youngest, was living with her when she died in 1852.

Plaintiffs gave in evidence:

1. Deed from Joseph N. Vien and wife to Moritz Taussig, conveying all their interest in the premises in controversy by quit-claim for $100, dated August 30, 1852.

2. Deed from Antoine Motier to Wm. Taussig, conveying all their interest in the same quit-claim for $—.

Deeds from Louis, Andrew, and John B. Motier, dated 29th February, 1848, and Michael Garci and wife, dated 8th April, 1851, conveying all their interest to Julien Chouquette.

To each of these deeds (the genuineness of which was admitted and also the validity of the certificates of the acknowledgments thereof, by the married women, to pass their real estate if any) the defendants objected on the ground that they were each irrelevant and incompetent testimony in the cause. The court overruled this exception.

Plaintiffs then showed that the premises were worth four dollars a month in 1852, and since 1854 five dollars per month. The possession of the premises by the defendants at

the commencement of this action was admitted by the record. This was the case of the plaintiffs.

The defendants gave in evidence a will of Antoine Motier, Sen., admitted to probate 8th March, 1834, whereby he, without mentioning or referring to any of his children, devised all his property to his widow, Felicité Motier; and then read in evidence a deed made by the sheriff of St. Louis county on 26th June, 1845, conveying to Sullivan and Papin all the interest of Felicité Motier in the premises in controversy.

He then examined as a witness Peter D. Barada, who testified that he was born in Bridgeton, but had since early youth resided in Carondelet. That Antoine Motier went on the land in 1819, or thereabouts. He was then a married man. He built a small cabin on the land in 1820, the same that is now there, and made a garden and resided there until his death, in 1834. Julien Chouquette enclosed the lot after the death of old Motier, enlarging an enclosure made by Antoine in his life-time. Motier left no property but this lot and furniture. Motier claimed the property as his while alive. His wife kept possession of it after his death, and claimed the land both under her husband and under her father, Clement Delor. After her husband's death she lived on this land and gardened it. Witness knew her well; did not visit her often. She paid Cromwell and others for land in the common fields. Witness told her she would lose the suit. She thought otherwise. The land in controversy is outside of the common fields, but Madame Motier claimed that the common field ran to the river.

Hyacinth Pigeon testified that Mrs. Motier claimed the land in controversy as her own after her husband's death; heard her speak of it as her own. She said she had sold fifty feet of it to Chouquette. This was in the last year of her life. She said she would not yield her claim to the land until her death; none of her children were with her the last years of her life. Said on cross-examination that she claimed the prop-

erty for herself during her life, and for her children after her death.

To the same effect were other witnesses.

Plaintiffs in rebuttal showed by Antoine Motier, Peter Gamache, and Louis Motier, that after the death of Antoine Motier, Sen., his widow only claimed to live on the property during her own life; acknowledging the right of her children to it after her death. She said this in presence of her children before 1845.

The defendants excepted to the testimony of these witnesses to show any arrangement or agreement between Madame Motier and her children as to the terms on which she occupied the land. The court overruled the objection.

The court gave the following instructions to the jury at the instance of the plaintiffs:

1. The plaintiffs have shown themselves to be clothed with the documentary title to the land in controversy if the deeds read by them in evidence are genuine, and they are entitled to a verdict unless the defendants and those under whom they claim have had possession of the premises, claiming the same adversely to the plaintiffs, for twenty years before the commencement of this suit.

2. If the jury believe from the evidence that Antoine Motier settled upon and improved the premises in the year 1820, or thereabouts, living thereon with his family; that he died in March, 1834; that after his death his widow, together with her minor children, continued to occupy the same premises up to 1845, and that the widow only claimed a life estate in the premises during all that time, recognizing the title of the heirs of Motier to the fee after her death, then such occupation was not during said time adverse to the heirs of Antoine Motier or those claiming under them.

The defendants excepted to these instructions.

The court gave the following instructions at the instance of the defendants:

1. If the jury believe from the evidence that more than twenty years next before this suit was begun Antoine Motier,

17—VOL. XXXIII.

Sen., had possession of the land in suit, or any part thereof, claiming it as his own ; that he continued such possession and claim until his death ; that he died and left as his widow Felicité Motier, and she, upon his death, succeeded to his possession of said land, claiming it as her own under him, and continued such possession and claim until April 19, 1845 ; and that the sheriff of St. Louis county, under regular executions, levied upon all her right, interest and estate in said land, and sold the same to Sullivan and Papin, the defendants ; and that ever since defendants have had possession of said land, claiming it as their own, then their title is better than that of the City of Carondelet, when she made the deed to plaintiffs.

2. If the jury believe from the evidence that the sheriff's deed given in evidence is genuine, and that the land therein described is the land sued for, and that the defendants, Sullivan and Papin, claim through said deed wholly or in part their right to said land, they should reject as evidence all words and acts of Felicité Motier said or done by her after April 19, 1845, concerning her interest in said land, or after said time concerning any alleged arrangement or agreement between her and her children with reference to how she had or did hold the possession of said land.

The court refused the following instruction asked by defendants :

" If the jury believe from the evidence that Antoine Motier, Sen., had possession of the land, or any part of it, at the time of his death, claiming it as his own, and that upon his death Felicité Motier continued the possession thereof, claiming it as her own by virtue of a will made by him or otherwise, then no agreement entered into between said Felicité and her children is proved that can affect the claim of the defendants to this land, unless it be shown by the plaintiffs to the satisfaction of the jury that her children claimed the land as against her prior to April 19, 1845, as the heirs of Antoine Motier, Sen., and that by reason thereof she, prior to said time, abandoned her said claim thereto, and agreed with her children to hold it under them thereafter."

*A. Todd*, for appellants.

I. The admission of the resolution was erroneous. There was no proper evidence of its passage.

II. The court erred in admitting the reading of said deed from the City of Carondelet to Antoine Motier and others.

The City of Carondelet, at the date of this resolution, was acting under its charter of March 1, 1851. (Sess. Acts of 1851, p. 139.) Under this charter it had no power to make conveyances of real estate not its own, but only of its own, and then only for the benefit of the city. (See § 5 of art. 1, p. 140.) The mayor had no power to " execute acts " that might be required of him, except the requirement was by an ordinance passed in pursuance of the charter. ( Sec. 4 of art. 6, p. 146.)

Again, the deed is made to Antoine Motier, Julien Chouquette, Victorine Motier, and Ophelia Motier, yet the alleged resolution names only " Antoine Motier." Although it says to him " and others," there is no evidence that " and others" mean said Julien, Victorine and Ophelia, and these and no persons else ; therefore no authority in any shape or mode appears for their being grantees in the deed. This is very material in considering plaintiffs' first instruction, in which it is alleged that plaintiffs have shown themselves " clothed with the documentary title to this land," for the documentary title is by virtue of this deed, and Wm. Taussig is the only plaintiff who has a deed from Antoine Motier. ( 22 Mo. 378.)

The admission of the other deeds was erroneous.

III. The first instruction for the plaintiffs was erroneous. The court so decided in this case, 28 Mo. 496.

The second instruction for the plaintiffs was erroneous. It is so decided in the former case, 28 Mo., pp. 499 & 500, opinion of Judge Richardson.

IV. The court erred in admitting the evidence of witnesses of what widow Motier said at different times as to how she held this land.

The will vested in the widow all right Motier died entitled to in this land. For this purpose the will was valid as against everybody but the children of Motier, and against them until they avoided it. Now this evidence was not in proof of such an avoidance. None of it was of any word or act of the children for such a purpose.

Two of the children were examined by the plaintiffs, and neither was asked if he ever objected to the will, nor did either say that he ever did.

This evidence was introduced for the expressed purpose of showing an agreement between the widow and her children.

It was then an agreement within the statute of frauds and perjuries.

The answer to this by this court in this case, in 28 Mo. 497–8, is not applicable to the evidence of the case as now presented. In this case there is no evidence that the agreement was to the effect that she should remain in possession "as doweress," and as entitled to remain "until her dower was assigned," and that she would not take the land under the will. It is in evidence that she did claim it absolutely, both under the will and under her father.

There is no evidence that she agreed to give up these claims.

There is another consideration not noticed by this court in its last decision in this case. To allow such an alleged agreement *in pais* to affect the defendants' rights, would be violative of that enactment in the conveyance act that provides that any transaction relative to real estate, not recorded, shall not affect a subsequent purchaser not having actual notice thereof.

When Sullivan and Papin purchased, the will was of record, and the widow was in possession. From these facts the intendment of law was that the Motier right in this land was in her. In this state of things will the law permit an agreement "*in pais*," not known to the purchasers from the widow, to affect the purchase?

V. The defendants' instruction, refused by the court, was legal and legally required for a due protection of the defendants' rights.

Barada's evidence showed that the widow claimed this land as well under Delor, her father, as under the will. The plaintiffs allege an agreement between her and her children, whereby she was to hold for life, remainder to her children.

Now this agreement, if any such, was of her own pure concession relative to this land as hers, and undisputed and indisputable, or was a compromise between her and her children under conflicting claims thereto.

*T. T. Gantt,* for respondents.

I. This case has been three times before the lower courts, and this is the third time it has come before the Supreme Court. When it was last before this court it was reversed and remanded on account of the jury being told that the plaintiffs had the documentary title to the land, without adding, " if the jury believed certain documents " [the genuineness of which was unimpeached] " were in fact genuine." This omission has been supplied in the instructions now given.

The only question in the case is whether defendants have a defence under the statute of limitations.

When the case was first before the Supreme Court the plaintiffs set up three answers to this defence.

1. That limitations did not run against Carondelet as to any part of her common until twenty years after the approval of the survey of the common, which was in July, 1834.

In the late case of Carondelet v. St. Louis, decided by the Supreme Court of the United States, (1 Black. 1791,) this is declared to be the law.

The second point made was that Madame Motier, to whom the lot was devised by a will void in law, continuing with her children to occupy the land in controversy after her husband's death, could not, as a matter of law, be heard to allege that she claimed the land adversely to her children, the heirs at law of her husband, if she were actually disposed to make such a claim. (Cook v. Nicholas, 2 Watts & Serg. 27 ; Dowdall v. Byrne, Beatty's R. 373 ; Page v. Selfly, Bul. N. P.

102 ; Reading v. Rawsterne, 2 Salk. 423 ; Fairclaim v. Shackleton, 5 Burr. 2604.)

This is a point of which, as it seems to the respondents, they have a right to claim the full benefit, and it results that the defence set up cannot prevail, and that upon the whole record, however the court may have ruled on other points, it is impossible that they should fail to have judgment.

The case was tried by the court below on the hypothesis that the defendants were at liberty to show the motives, purposes, and objects of the widow in holding possession of the land after the death of her husband.

It was shown that she remained there with her unmarried children, the youngest being there with her up to her death, in 1852, and evidence was given tending to show that she uniformly claimed the land as belonging to her children, saying that she would remain there as long as she lived, and then it belonged to her children, or that they could have it then, and refusing to treat the property as her own by sale or otherwise without concert with her children.

Such a claim on the part of the widow would have been simply what she was entitled to have as doweress. (Acts of 1825, § 8, p. 334.) It was in evidence that this lot and the hut upon it was all the property left by A. Motier on his death, and there was no assignment of dower.

As to the inquiry into the nature of Madame Motier's possession, it was indeed supposed by plaintiffs, that under the circumstances she was precluded from averring it to be hostile to her children, and that the law fixed the nature of it without appeal, as her duty to them, she being their natural guardian, required. And to this point were cited Dowdall v. Byrne, Beatty's R. 373, and Cook v. Nicholas, 2 Watts & Serg. 27 ; Buller's N. P. 102 ; 2 Salkeld, 423 ; and 5 Burr. 2604.

But plaintiffs were not prepared for the astonishing doctrine that the plaintiff, against whom the statute of limitations was set up as a defence, was not at liberty to show that the possession, in respect of which this defence was supposed to exist, was not in fact adverse to him.

The plaintiffs had two titles. One of these was their right as heirs of A. Motier, Sen. It was shown that he left eight children, and the plaintiffs represented all of these. The position of A. Motier, Sen., was that of prior possession. But his possession had not ripened into a title, having been short of twenty years, even counting from the first period at which limitations could have commenced to run, (Reilly v. Chouquette, 18 Mo. 220,) which was 1832. Possession was changed in 1847. Though short of twenty years, it yet was good as against a more recent possession. (Crockett v. Morrison, 11 Mo. 3.) But the real title was outstanding in Carondelet, and the plaintiffs proceeded to get that also. This was proper, and the plaintiffs were right in showing all the titles that centered in them. For this purpose they read their deeds. The court would have had no right to compel them to elect, (The Schools v. Reilly, 28 Mo. 415,) even if these titles had been inconsistent with each other, which was not the case.

BATES, Judge, delivered the opinion of the court.

The deed of the City of Carondelet was properly admitted in evidence. The City of Carondelet having power to dispose of its common, the deed is presumed to have been executed in pursuance of that power, and it was unnecessary for the plaintiffs to show special authority by resolution or ordinance, and therefore the objections to the resolution introduced for that purpose are not considered.*

The benefits of Madame Motier's possession devolved upon the defendants, who became in privity with her by act of law, but it was competent for either party to prove the character of that possession; and the defendants, having given in evidence declarations of Madame Motier on that subject, cannot object to similar testimony on the part of the plaintiffs.

The plaintiffs, in making their case, showed only a title under the City of Carondelet; but the defendants, in showing their own claim under the elder Motier, showed also that of

---

* See Swartz v. Page, 13 Mo. 603.

the plaintiffs under Motier, the ancestor of some of them and of the grantors of the others, and they cannot apply their testimony to defeat the case made by the plaintiffs to the exclusion of the case which they themselves have made for the plaintiffs.

They cannot say that because the plaintiffs claimed under the City of Carondelet, and Madame Motier's possession was adverse to Carondelet, that, therefore, her possession was adverse to the plaintiffs, notwithstanding that she in fact may have held possession in privity with and for the plaintiffs.

The other judges concurring, judgment is affirmed.