REILLY, Appellant, *vs.* CHOUQUETTE, Respondent.

1. The statute of limitations did not begin to run against the inhabitants of the town of Carondelet, until they were incorporated, and thus capacitated to sue; but the claim of an occupant of a lot would constitute the ground of a valid compromise between him and the inhabitants.

2. An act of the legislature authorized the board of trustees of the town of Carondelet to sell and convey property of the town, and authorized the chairman of the board to execute the deeds. Under this act, the board of trustees passed an ordinance, authorizing the chairman to convey lots of a certain size to those inhabitants of the town who had possessed and cultivated the same, upon the establishment of their claims. *It was held* that a deed executed by the chairman, *in his own name,* was to be considered as the act of an agent appointed by law to perform it, with the concurrence of the corporation, and as such passed the title of the town.

3. A deed executed by the chairman acting in good faith, clothed with the formalities of the law, is to be regarded as valid until it is shown that his act was a mere usurpation, founded on no facts warranted by law. No errors of judgment nor mistaken conclusions of law would invalidate it; nor would the fact that the lot conveyed was not the identical one claimed.

4. When a deed cannot operate but as the execution of a power, it will be presumed to be in execution of the power.

*Appeal from St. Louis Court of Common Pleas.*

This was an action to recover possession of the south-west fractional quarter of block 87, within Eiler's survey of the town of Carondelet. Both parties claimed title under the town.

The plaintiff offered in evidence a deed for said fractional quarter, the premises of which were as follows:

"This indenture made this 7th day of July, 1834, between Peter J. Shultz, chairman of the board of trustees within and for the town of Carondelet, in the county of St. Louis, and state of Missouri, by virtue of authority conferred on me by an act of the legislature passed the thirteenth day of February, in the year 1833, authorizing the corporation of Carondelet to sell and convey certain lots of ground, of the first part, and Philip B. Reilly of the second part, witnesseth: that the said Peter J. Shultz, for and in consideration of the sum of two dollars and fifty cents unto him well and truly paid, according to the condition of ordinance No. 31, passed the second day of June, in the year of our Lord, 1834, by Phillip B. Reilly, of the second part, at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, hath granted, bargained, sold and conveyed, and doth, by these presents, grant, bargain, sell and convey unto the said Philip B. Reilly, his heirs and assigns, a certain lot," (describing it,) " it being the same piece or parcel of land first improved by Hyacinth Pigeon, previous to the year 1832."

The warranty clause of the deed was as follows: " And the said Peter J. Shultz, chairman of the board of trustees aforesaid, by virtue of authority in him vested, according to the above recited act of the legislature, doth covenant and promise to and with the said Philip B. Reilly, his heirs and assigns, by these presents, that he, the said Peter J. Shultz, chairman, &c., the said above described lot, &c., unto the said Philip B. Reilly, his heirs and assigns, against the claims of the inhabitants of said town of Carondelet, and against any person or

15—VOL. XVIII.

persons, claiming under them, whomsoever, shall and will warrant and forever defend by these presents."

The deed was signed " P. J. Shultz, chairman," and countersigned by the register, and the seal of the corporation was affixed to it. To the admission of this deed in evidence, the defendant objected, but his objection was overruled.

The defendant offered in evidence an ordinance of the board of trustees of the town of Carondelet, passed June 2d, 1834, authorizing the chairman of the board to execute deeds in fee simple to those inhabitants of the town who were in possession of lots which they had cultivated prior to 1832; also a deed from the board of trustees of the town to him, dated January 29, 1850, for the whole of fractional block 87. In this deed it was recited that one Motier cultivated the lot from 1823 to 1833, when he conveyed to Louis Fasseu, who remained in possession up to August 18, 1834, when he conveyed to the defendant.

There was evidence tending to show that Motier cultivated the lot in controversy, as early as 1823, and was succeeded by Fasseu, who sold to the defendant, and that Hyacinth Pigeon never cultivated any part of the present block 87, but that his cultivation was some distance south of it. It was shown that Eiler's survey had made some changes in the blocks and streets. No conveyance was shown from Motier to Fasseu, or from Fasseu to the defendant.

The court below instructed the jury to find for the defendant, s to so much of the lot as he, and those under whom he claims, had been in actual possession of for twenty years continuously prior to the commencement of this suit, claiming the same as their own. A large number of other instructions were given and refused.

There was a verdict and judgment for the defendant.

*S. A. Holmes*, for appellant. 1. The compromise by the inhabitants of the town under the act of February 13, 1833, and the deed to the plaintiff, are conclusive upon the inhabi-

tants of the town and upon all persons claiming under them by title subsequent. 9 Mass. 186. ib. 193. *Strother* v. *Lucas*, 12 Peters, 410.  9 Mo. Rep. 326.  2. The defendant's deed showed that his possession was not adverse to the inhabitants of Carondelet, but that, on the contrary, he acknowledged their title.  23 Wend. 531.  Ang. on Limitations, 437, §27. ib. 400, §5.  11· Penn. 189.  9 Mo. 484.  3. No privity of title being shown between Motier, Fasseu and the defendant, their several wrongful possessions could not be tacked, so as to make out the term prescribed by the statute of limitations.  6 Pick. 415.  3 Wash. C. C. R. 475.  9 Cow. 653.  1 J. R. 156.  16 J. R. 293.  Ang. on Lim. 446, §34. 5 Met. 15–32.  20 Pick. 458.  4. The deed to plaintiff was the deed of the inhabitants of the town of Carondelet.  It purports to be executed in accordance with a special power conferred upon the chairman of the board of trustees by the act of February 13, 1833.  It is signed by the chairman of the board, sealed with the corporate seal, and countersigned by the register.  Ang. & A. on Corporations, 192, §6 *et seq.*  5 N. H. 510.  6 Pick. 409.  2 Hill, 489.  6 Conn. 464.  1 Greenl. 231.  22 Vt. 274, 286.  11 ib. 385.  3 J. R. 226.  6 Paige, 60.  Sess. Acts 1833, p. 16.

*Gantt* and *Whittelsey*, for respondent.  1. The deed offered in evidence by the plaintiff was the private deed of P. J. Shultz, and not the deed of the inhabitants of the town, and therefore passed no title.  *Combe's case*, 9 Coke, 766. *Elwell* v. *Shaw*, 16 Mass. 42.  1 Hare & Wallace's Leading Cases, 422, notes and cases there cited.  *Griswold* v. *Bigelow*, 6 Conn. Rep. 258.  *Hatch* v. *Barr*, 1 Hamm. (O.) Rep. 181.  *Townsend* v. *Corning*, 436.  *Townsend* v. *Hubbard*, 4 Hill, 351.  8 Conn. Rep. 192, 206.  1 Greenl. Rep. 339.  2. The defendant showed a title by adverse possession of himself and those under whom he claims for more than twenty years.  The acceptance of a deed did not estop him from setting up adverse possession.  *Macklot* v. *Dubreuil*,

9 Mo. 477. 6 Met. 337. 5 ib. 173. 7 Wheat. 535. 4 Pet. Rep. 506. *Watkins* v. *Holman*, 16 ib. 25. 3 ib. 43. 6 Met. Rep. 337.

Scott, Judge, delivered the opinion of the court.

In the examination of this and of the kindred case of *Slevin* v. *Robert and wife*, we have investigated and stated the general principles by which the two cases should be determined, without a review of the several instructions given and refused. In the preamble to the act of 13th of February, 1833, it is recited, that there are certain lots of ground within the limits of the town of Carondelet, in the county of St. Louis, which belong to the inhabitants of that town in common, and that it is represented, that the sale of the said lots would greatly conduce to the present and future welfare of the said town. The act then proceeds to authorize the board of trustees of the town to sell and convey the vacant and unoccupied lots to which the inhabitants had a legal or equitable title, included within the surveys of said town, made by Lawrence M. Eiler, in November, 1832. The lots thus authorized to be sold were to be conveyed by the chairman of the board of trustees, and in their behalf. The deed was required to be countersigned by the recorder, and to have the corporate seal annexed thereto. The fourth section of the act authorizes the inhabitants to compromise and settle with any adverse claimant to any lot within the survey of the town, and a deed was required as in case of a sale of a lot. On the 2d of August, 1832, the town of Carondelet was incorporated by the county court of St. Louis county, by the name of the inhabitants of the town of Carondelet, in pursuance to the provisions of the act for the incorporation of towns, approved 26th January, 1825. In pursuance to the fourth section of the act of 13th February, 1833, the board of trustees of the town directed their chairman to convey to all persons being inhabitants thereof, who were in possession of a

Reilly v. Chouquette.

lot in said town, prior to the year 1832, and who had cultivated the same, by a deed in fee simple, upon the payment of five dollars. The lots thus conveyed were required to be one hundred and fifty feet front by three hundred feet deep, where the situation would admit of it, and where it would not, to conform as nearly as possible. The chairman of the board was required to execute the deed by signing the same and having it countersigned by the recorder. This ordinance was passed June 2d, 1834. The lots in controversy were within Eiler's survey of the town of Carondelet.

1. In the investigation of this subject, the question first to be disposed of is, whether the inhabitants of the town were in a condition that would authorize an individual claiming a lot, to insist on the length of possession, as conferring a title. Could a person, by adverse possession, acquire a lot against the inhabitants of the town? The ground on which a right to prescribe against them rests, is not seen. They were not incorporated until the 2d of August, 1832, as has been shown. Until that time they had no capacity to sue or to be sued. Nor were they clothed with any powers, or charged with any duties by law which would constitute them even a *quasi* corporation for any purpose. When the act of congress of the 13th of June, 1812, was passed, the United States enjoyed the entire sovereignty in this (then) territory, and by their grant could confer on the inhabitants a capacity to hold the land. But there the act stopped; it gave no power, nor imposed upon the inhabitants any duty, which would warrant a court in holding that they constituted a *quasi* corporation. The inhabitants would not forfeit their rights by reason of not having been incorporated. The majority of them may have been opposed to it, and the rights of the minority are not to be sacrificed by the acts or omissions of the majority. The universal rule, in the construction of the statute of limitations, seems to be, that where there is no person to sue, no laches can be imputed. It was not the intention of the legislature to embrace such cases with-

in the statute ; such a construction would be extremely unjust and has no foundation in reason. *McDonald* v. *Walton*, 1 Mo. Rep. 727 (521.) *Richards* v. *Maryland Insurance Co.*, 8 Cr. 84. *Murray* v. *East Ind. Co.*, 5 Barn. & Ald. In advancing the opinion, that a claimant of a lot had no right to prescribe against the inhabitants, we are not to be understood as maintaining that the claim of an occupier would not constitute the ground of a valid compromise between him and the inhabitants. When a right is disputed and a compromise ensues, that compromise will not be disturbed, should it turn out afterwards that one of the parties had no right in law. Such a principle would overthrow all compromises. The compromise of a doubtful claim is a good consideration for a contract. The title under the statute of limitations failing, there is no title shown in the record on which the parties can stand but the deed under the ordinance of 1834. A party accepting a deed under that ordinance, could only claim the lot described in it. It matters not whether the deed is an estoppel or not on the party accepting it, as he has no show of title without it.

2. As to the deed executed by the chairman of the board of trustees, we do not regard it as a corporate act ; that is, merely as a deed of the corporation in the same sense that a deed is the act of an individual. The deed was executed by no corporate authority, as such, but under an ordinance which merely repeated the requirements of the act of the legislature. It was the act of an agent of the law, appointed to perform it, with the concurrence of the inhabitants of the town. The power to execute it was conferred on the chairman by statute, and it is not to be likened to a deed made by a corporation of its mere volition, just as a natural person conveys. The principles governing the execution of deeds made by corporations as such, are not applicable to that involved in the present controversy. The deed here is binding on the inhabitants, not as a corporate act, but because it is executed with their consent,

by an agent authorized by law. The ordinance, so far as relates to the execution of the deed, is not repugnant to or inconsistent with the statute; it is a mere repetition of it. After the inhabitants had made a compromise, or directed in what manner the rights of adverse claimants should be adjusted, the duty of making the deed devolved by law upon the chairman of the board of trustees. So the inquiry is, not whether the deed is valid, as a corporate act, but whether it is in pursuance to the terms of the statute from which it derives its existence. The question thus presented avoids all the objections urged against the deed, arising from the form of its execution. The deed, when viewed in the light of an act by an agent of the corporation, is not obnoxious to the objections made to it as a corporate instrument. There is no hardship in this view of the subject. In the form in which the deed now is, the consent of the inhabitants is as fully expressed as though it had been a technical corporate act. They consented to the compromise by their ordinance, and the form of signifying that consent is a matter of indifference.

3. If a deed is absolutely void, and not merely voidable, when it is used for the purpose of affecting the interests of another, he may show that it is void. One in possession without color of right, may defend against such a deed. If the chairman of the board of trustees had wantonly, without any foundation of authority, made a deed to one who had never been an inhabitant of the town, and who never possessed or claimed a lot, these facts appearing, his deed could not be sustained. The deeds executed by the chairman of the board of trustees, under the act of 1833 and ordinance of 1834, are not to be construed as instruments made by an officer of the law conveying the right of another *in invitum.* The action of the chairman is supposed to be in accordance with the will of the trustees. The conveyances were voluntarily made with a view to pass the right of the inhabitants. They are not the acts of an officer deputed by law to convey against the will of

the corporation. The chairman acted with the corporation in adjusting adverse claims to the lots held in common. He was the voluntary agent of the board—a component part of the corporation, and its interests were confided to his management. Thus acting, when a deed was made by him in good faith, clothed with the formalities of the law, it should be regarded as valid until it is shown that his act is a mere usurpation, founded on no facts warranted by law. If the circumstances existed on which he was authorized to act, no error in judgment—no mistaken conclusion of law—will be allowed to invalidate his deeds. The survey of Eiler disturbed and threw into confusion the boundaries of the lots as previously possessed and cultivated by their occupants, so that, in some instances, it was not possible that the identical lot possessed by an occupant could be conveyed to him according to the survey of the town referred to in the act of 1833. Under such circumstances, if the lot conveyed should not be the identical one claimed by the occupant, the deed of the chairman cannot be considered void. The spirit of the ordinance is not violated by upholding such conveyances. By such a course, no more lots will be conveyed than if each one of the claimants had received a deed for the identical lot which he possessed prior to the year 1832. That a lot not so desirable as he wished was conveyed to a claimant who was entitled to one, is no reason why the corporation should now set aside its deed. All the lots were subject to be conveyed, and the mode of distribution among the claimants is a matter of indifference to the corporation. It occupies as favorable a position as if each claimant had received a deed for the lot which he possessed. These conveyances were made when the lots were of little or no value. The object of the town was to increase its inhabitants. The lots were of no concern. Under such circumstances, to permit the corporation, now that the property has increased in value, to go back and overhaul its proceedings, with a view to annul them, after so long an acquiescence, would be doing great injustice.

4. Sugden, in his treatise on Powers, recommends that the deed executing a power, be expressed to be in exercise of it and of every other authority enabling the donee in that behalf. This, however, is given by way of advice, and these circumstances are not deemed absolutely essential to the valid execution of the power. 1 vol. 243-4. Subsequently the same author says, that the donee of a power may execute it without reference to it or taking the slightest notice of it, provided the intention to execute it appear. Ib. 373-4. Where a deed cannot operate but as the execution of a power, it will be presumed to be in execution of the power. We do not know that this is material, but as something has been said in relation to it, and as it may arise in this case hereafter, we have given what is understood to be the law on the subject. *Swartz* v. *Page*, 13 Mo. Rep. 611.

With the concurrence of the other judges, the judgment is reversed and the cause remanded.