TIGH, Defendant in Error, *vs:* CHOUQUETTE, Plaintiff in
": Error.

By act of the general assembly approved February 13, 1833, the board of
trustees of the town of Carondelet was authorized to sell and convey *vacant
or unoccupied lots* to which the inhabitants had the legal or equitable title.
The chairman of the board was authorized to execute deeds for the lots
thus sold.   An ordinance of the town was passed to carry this act into
effect.   *Held :*

1. That the authority of the town, under this act, to convey a lot to which
   at the time it had the title, could not be disputed, on the ground that the lot
   was not *vacant,* by a party claiming under the town by title subsequent.
   The fact that there was a squatter upon the lot would not prevent it from
   being considered as vacant.
2. That a deed executed by the chairman, *in his own name,* with the concur-
   rence of the corporation, passed the title of the town. (*Reilly* v. *Chou-
   quette,* 18 Mo. Rep. 220, affirmed.)

*Error to St. Louis Court of Common Pleas.*

This was an action in the nature of ejectment for a lot in
the north-east quarter of block 87, in Eiler's survey of the
town of Carondelet.   Both parties claimed title under the
town, the plaintiff under a deed dated September 1, 1834, and
the defendant under a deed dated January 29, 1850.

By the first section of an act of the general assembly ap-
proved February 13, 1833, the board of trustees of the town of
Carondelet was authorized to sell and convey all the *vacant*
or *unoccupied lots* in Eiler's survey, to which the inhabi-
tants had the legal or equitable title.   By the third section of
the same act, the chairman of the board of trustees, in their
behalf, was authorized to execute deeds for the lots thus sold.
On the 15th of July, 1833, the proper authorities of the town
passed an ordinance, No. 19, to carry into effect the sections
above referred to.   This ordinance, however, was not in the re-
cord.   Under this act and ordinance, the lot in controversy
was sold to the plaintiff as a vacant lot.   The deed was execu-
ted by the chairman of the board of trustees in the same form

as the deed to the plaintiff in the case of *Reilly* v. *Chouquette*, 18 Mo. Rep. 221.

The defendant's title was as follows :

The 4th section of the act above referred to authorized the board of trustees, in all cases where the legal or equitable title of the inhabitants of the town was contested, to compromise with the adverse claimant, and authorized the chairman of the board to execute deeds in the manner prescribed by the third section. On the 2d of June, 1834, the board of trustees passed an ordinance, No. 31, the first section of which declared that that every inhabitant of the town who had been in possession of a lot prior to 1832, and had cultivated it, should be entitled to a deed for the same. The third section authorized the chairman of the board to execute the deeds.

The defendant offered evidence to show that Antoine Motier settled on the *north-west* corner of block 87 as early as 1824, and built a house thereon, and made some improvements, which, on the 3d of August, 1833, he sold to Louis Fasseu. The deed to Fasseu described the lot conveyed as the north-west fractional quarter of block 87. Fasseu lived in the house until August 18, 1834, when he sold to the defendant. The deed described the lot conveyed the same as the deed from Motier. On the 29th of January, 1850, the board of trustees of the town of Carondelet executed to the defendant a deed for the whole of block 87. The deed purported to be executed pursuant to the third and fourth sections of the act of February 13, 1833, and ordinance No. 31. It recited that Motier was possessed of the lot from 1823 until 1833, when he sold to Fasseu, who was in possession of the same until 1834, when he conveyed to the defendant, who had since continued in possession. There was no dispute but that this deed was executed in proper form to pass whatever title remained in the town. The defendant offered to prove that his fence, at the date of the deed to the plaintiff, included part of the lot in controversy, and so the same was not vacant. This evidence was excluded, and an exception taken.

The defendant asked the following instructions, which were refused :

1. The jury is instructed that the instrument read in evidence by the plaintiff is not the deed of the town of Carondelet.

2. The jury is instructed that the said instrument is not sufficient in law to convey any title of the town of Carondelet to the land in controversy.

3. The jury is instructed that the town of Carondelet had no authority to sell, under the 1st section of the act of February 13, 1833, any lots which were not vacant and unoccupied, and that any sale or attempt to sell, under that act, a lot actually occupied by any person holding adversely to the town of Carondelet, was and is a nullity.

Under other instructions given, there was a verdict for the plaintiff.

*T. T. Gantt*, for plaintiff in error.  1. The paper read in evidence, purporting to be executed by P. J. Shultz to the plaintiff, is not valid to convey any interest of the town of Carondelet to the land in controversy. (*Reilly* v. *Chouquette*, 18 Mo. Rep. 220, and cases there cited.)  2. The act of February 13, 1833, conferred on the board of trustees of the town of Carondelet the right to sell only the *vacant and unoccupied* lots of Eiler's survey ; and any sale of a lot held adversely to the town was under that act a nullity.  (Id. ibid.)

*S. A. Holmes*, for defendant in error.

Scott, Judge, delivered the opinion of the court.

1. The idea in which the defence of the plaintiff in error seems to be conceived, cannot be sustained.  That idea is, that the execution of a deed for a lot in the town of Carondelet was the execution of a naked power ; and, unless all the circumstances existed that warranted its exercise, the act was void.  It is believed that such is not the view to be taken of the act and ordinances under which the authorities of the town proceeded in settling the titles and disposing of her vacant and unoccupied lots.

The act of 13th February, 1833, conferred on the board of trustees of the town of Carondelet authority to sell and convey, in fee, all the vacant or unoccupied lots of ground to which the inhabitants of the town had the legal or equitable title. This act was passed, not because the property, whose sale was authorized, did not already belong to the inhabitants, but because it was held in common, and the act was passed to enable them to convey it in a corporate capacity. This statute conferred no title on any person who had not one previously. The power of ascertaining which of the lots were vacant or unoccupied, must have been given to the inhabitants. But such a power could not warrant them in disturbing the title of any individual which he possessed under any law or ordinance. Subject to this qualification, the inhabitants determined which of their lots were vacant or unoccupied. If there was a squatter on a lot, that would not prevent them from considering it as vacant. Public land, on which a settler is seated without authority, is, nevertheless, regarded as vacant. Under the first section of ordinance No. 31, Chouquette, on his own possession prior to the year 1832, was not entitled to a lot. He was not on the land personally until 1834. Although he may have availed himself of a derivative possession, yet he claims under those who only conveyed the north-west corner, or quarter of block 87. If, in his occupancy of that corner or quarter, he encroached on another lot in the same block, the subject of this suit, which was apparently vacant or unoccupied, or unclaimed, as appeared by Eiler's survey, such encroachment would confer no title under ordinance No. 31. It would not rightfully prevent the lot from being considered as vacant by the inhabitants. In the case of *Reilly* v. *Chouquette*, 18 Mo. Rep. 227, this court held that nothing but bad faith and a wanton usurpation of power could avoid a deed of the inhabitants under the act of the 13th February, 1833 ; that, if the circumstances existed under which they were warranted in acting, no error in judgment, no mistaken conclusion of law would be allowed to invalidate the act. The inhabitants, then, acting on

this subject, and having determined that this lot should be sold, there is no foundation in law for the plaintiff, claiming under them by a subsequent conveyance, to contest, on the ground of mistake or misapprehension, the correctness of that determination, whether made by the inhabitants · or the chairman deputed by them. There is no hardship in this on Chouquette, who is merely asserting a title acquired from the inhabitants subsequent in date to that of the plaintiff. The law entrusted the inhabitants with the authority to sell and compromise their titles to the vacant lots in their village. They have done so, and in so doing have passed away a title. Now no one claiming under them subsequently can allege that their judgment was erroneously exercised, in coming to the conclusion that a lot was vacant.

2. The question as to the validity of the deed, growing out of the form and manner of the execution of it, we consider as settled by the case of *Reilly* v. *Chouquette*, to which reference has been already made. The deed in the present suit was executed under the third section of the act of 13th February, 1833. In the case cited, it was under the 4th section of the act, and that section provides that the deed under it shall be executed in the manner and under the restrictions prescribed by the 3d section of the act. Then, if the deeds are alike, as they are in respect to the matter to which objections are made, the deed under the 3d section must be valid.

Ordinance No. 19, approved July 15th, 1833, authorizing the sale of all the vacant and unoccupied town and out-lots of Carondelet, is not preserved in the record of this case; but as no point was made on its absence, its omission cannot vary the judgment. The cause has been considered as though it was in it. The judgment is affirmed; the other judges concurring.