WELLS, *Appellant*, v. PRESSY *et al.*

DIVISION TWO.

1.    **Common-Field Lots :** VILLAGE OF ST. FERDINAND : STATUTE, REPEAL OF.  Sections 10 and 11 of the act of the legislature of March 14, 1835, appointing trustees of " the school lands and lots, common-field lots and commons of the village of St. Ferdinand," and providing that said trustees should have the same powers in relation to selling, leasing or disposing of said lands as the trustees appointed by said act for the village of a Robert was repealed, so far as it related to the village of St. Ferdinand, by the act of the legislature of February 3, 1837.

2.    —— : —— : ——.  The offices of the trustees " of the common-field lots and commons of the town of St. Ferdinand," appointed by said act of March 14, 1835, being vacated by the act of February 3, 1837, and the trustees appointed by the latter act having authority over only the school lands, the trustees of the town of St. Ferdinand were invested with the sole power of managing, selling or leasing its commons.  ( R. S. 1825, p. 211, sec. 1.)

Wells v. Pressy.

3.  ——— : ——— : INCORPORATION.   The town of St. Ferdinand was a
    corporation on November 2, 1844, the date of the execution of a
    lease of a common lot in controversy in this case, and the town
    authorities elected in that year had the authority to execute said
    lease.

4.  Municipal Corporation, Exercise of Powers of: LEGISLA-
    TIVE RECOGNITION.   The exercise of corporate functions by a town,
    and the recognition of it by the legislature as a corporation, are
    circumstances to be considered in determining the question of its
    corporate existence.

5.  ——— : LOST ORDINANCE: 'PROOF OF CONTENTS.   The contents of a
    lost ordinance may be established by parol evidence.

6.  ——— : ———.   The supreme court will not reverse the finding of
    the trial court on the question of the existence and loss of such
    ordinance where there is substantial evidence to sustain such
    finding.

7.  ——— : DEED, PRIMA FACIE REGULAR.   A deed executed by a town
    or city, regular on its face, under the corporate seal for a part of
    its common, is *prima facie* evidence that all the prerequisites of
    the law authorizing the sale have been observed.

8.  ——— : ——— : STATUTE.   A lease recorded in 1845, and more
    than forty years prior to the time of its introduction in evidence is
    under Revised Statutes of 1879, sections 2305 ( act of 1847 ) and 2310,
    *prima facie* evidence of its execution and genuineness, and one
    purchasing in the year 1880 is affected with notice of its contents.

*Appeal from St. Louis County Circuit Court.*—HON.
W. W. EDWARDS, Judge.

AFFIRMED.

*Lee & Ellis* and *Montague Lyons* for appellant.

(1)   The board of trustees of the town of St. Ferdi-
nand had no power, in the year 1844, to make, or
authorize the making of, the lease from them to Mary
Lyons, dated November 2, 1844, and read in evidence by
the respondents.   Act of March 14, 1835 ; Laws of Mo.
of 1835, p. 488 ; R. S. 1835, p. 600 (an act for the incor-
poration of towns).   (2)   Said lease from the trustees
of the town of St. Ferdinand to Mary Lyons is defective

and invalid. There was no proof, either on the face of the instrument or by evidence *aliunde*, that it was executed in pursuance of, or in compliance with, any proper authority for its execution; no authority was shown, either on the face of the instrument or by evidence *aliunde*, for the execution thereof by the chairman of the board of trustees, and said lease is, on its face, the individual act of one Jas. L. Holliday, whose name purports to be signed thereto as chairman. It should, therefore, have been rejected by the trial court. *Osborne v. Tunis*, 25 N. J. L. 633; *President & Trustees v. Railroad*, 44 Cal. 106; *Dezeng v. Beekman*, 2 Hill (N. Y.) 489; R. S. Mo. 1835, sec. 2, p. 601; *St. Louis v. Gorman*, 29 Mo. 593; *Pettis Co. v. Gibson*, 73 Mo. 502; *Bumgarner v. Cogswell*, 49 Mo. 259. (3) The proceedings of the board of trustees of said town were required to be kept in a journal, and should be public. R. S. 1835, sec. 6, p. 601. Parol evidence was, therefore, inadmissible to prove such proceedings, or the existence of the ordinance upon which the respondents rely, or the contents of such ordinance, in the absence of sufficient proof of the previous existence of an executed original ordinance, and its subsequent loss or destruction. *Perry's Adm'r v. Roberts*, 17 Mo. 36; *Gould v. Trowbridge*, 32 Mo. 291; *Attwell v. Lynch*, 39 Mo. 519; *Blondeau v. Sheridan*, 81 Mo. 545; *City of Aurora v. Fox*, 78 Ind. 1. (4) Evidence, that the treasurer of the town of St. Ferdinand, or subsequently the treasurer of the city of St. Ferdinand, may have accepted from Mary Lyons, or her assignee, William Gilker, the rent provided for in the lease read in evidence, did not create an estoppel as against either the town or city of St. Ferdinand, or the latter's grantee, the appellant in this case. *Heidelberg v. St. Francois Co.*, 100 Mo. 69; *Sturgeon v. Hampton*, 88 Mo. 203; *Pettis Co. v. Gibson*, 73 Mo. 502; *St. Louis v. Gorman*, 29 Mo. 593.

*George W. Royse* and *W. F. Broadhead* for respondents.

(1)  The absolute fee-simple, title to the commons, United States survey, number 1202, of which lot 55 is a part, was originally vested in the inhabitants of the village of St. Ferdinand, to be regulated and disposed of according to the laws of Missouri. Acts of Congress of June 13, 1812, and of January 27, 1831 ; 1 Land Laws of U. S., pp. 410 and 432 ; *Le Bois v. Brannell*, 4 How. (U. S.) p. 499; *Adm'r of Janis v. Gurns*, 4 Mo. 458 ; *Bird v. Montgomery*, 6 Mo. 510 ; *Langlois v. Crawford*, 59 Mo. 469 ; *Vasquez v. Ewing*, 42 Mo. 247 ; *Public Schools v. Schoenthaler*, 40 Mo. 372 ; *Soulard v. Clark*, 19 Mo. 570; *Glasgow v. Baker*, 85 Mo. 559.    (2)  The county court of St. Louis county had authority to incorporate, and, by its orders of 1829 and 1843 read in evidence, the inhabitants of said village in the district embracing the whole of the commons, or United States survey 1202, became legally incorporated as the town of St. Ferdinand; and the validity of such incorporation cannot be collaterally attacked.    R. S. 1825, p. 764 ; R. S. 1835, pp. 600, 601, sec. 1, etc.; *Keyser v. Trustees*, 16 Mo. 88 ; *State ex rel. v. Weatherby*, 45 Mo. 17 ; *Snoddy v. Pettis Co.*, 45 Mo. 361; *State v. Evans*, 83 Mo. 319 ; *Price v. Real-Estate Ass'n*, 101 Mo. 107. (3)  The said town, the successor of the "Inhabitants of the village of St. Ferdinand," had full power to lease said commons, or any part thereof.    R. S. 1825, pp. 211, 764; R. S. 1835, sec. 1, pp. 600, 601; R. S. 1835, p. 385, sec. 34, clause 9 ; *Carondelet v. Lannan*, 26 Mo. 461-465 ; *McDonald v. Schneider*, 27 Mo. 405; Dillon on Mun. Corp. [1 Ed.] sec. 448, p. 434. (4)  This power to lease was properly exercised in the lease to Mary Lyons, the grantor of defendants, and those under whom they claim ; it was signed by the proper officer, under the corporate seal of the town, duly

acknowledged and recorded, and, like all sealed convey-
ances, bore *prima facie* proof upon its face, that it was
duly executed and delivered, and in legal presumption,
in accordance with the legal power conferred by said
acts, and under the authority of the board. *Schwartz
v. Page*, 13 Mo. 603 ; *Addis v. Graham*, 88 Mo. 197 ;
*Chouquette v. Barada*, 33 Mo. 349 ; *Reilly v. Chou-
quette*, 18 Mo. 220 ; *Tigh v. Chouquette*, 21 Mo. 233 ;
*Musser v. Johnson*, 42 Mo. 74 ; *Sandford v. Tramlette*,
42 Mo. 384 ; *Jamison v. Fopiana*, 43 Mo. 565 ; *Dale v.
Wright*, 57 Mo. 110 ; *Geary v. City of Kansas*, 61 Mo.
378 ; *Norfleet v. Russell*, 64 Mo. 176 ; *Griffith v.
Schwenderman*, 27 Mo. 412 ; *Public Schools v. Risley*,
28 Mo. 415 ; Dillon on Mun. Corp. [1 Ed.] sec. 130, p.
172. ( 5 ) If it should be considered that the defend-
ants are called upon to prove the authority of Holliday,
the chairman of the town board, to execute the lease, the
record affords the proof ; an ordinance or resolution of
said board was passed, providing for the leasing of the
commons, the terms and conditions of such leases, and
the manner of leasing ; this ordinance having been lost,
the defendants were entitled to introduce proof of its
contents ; and the proof shows the authority of the
chief officer of the board. *Perry v. Walker*, 57 Mo.
169–171 ; *Faulk v. Colburn*, 48 Mo. 225 ; *Newcomb v.
Drummond*, 4 Leigh. 57 ; *Blondeau v. Sheridan*, 81 Mo.
556 ; *Henderson v. Henderson*, 55 Mo. 534 ; *Shaw v.
Pershing*, 57 Mo. 416 ; *Christy v. Kavanaugh*, 45 Mo.
375 ; *Meyers v. Russell*, 52 Mo. 26 ; *Barton v. Mur-
rain*, 27 Mo. 235. ( 6 ) Mary Lyons having entered
under the lease, and the town of St. Ferdinand having
accepted rent thereunder from her and those holding
under her, from 1844 to the time when said town
became incorporated as a city in 1857 ; and said city
having accepted rent under said lease from 1857, until
the sale of the fee to plaintiff in 1880—in all a period
of thirty-six years—in the meantime the inhabitants
having acquiesced—said lease was thereby fully ratified

by the town, the city and the inhabitants of St. Ferdinand; and all are estopped from disputing its validity. *Carondelet v. McPherson*, 20 Mo. 203, 204; *Tigh v. Chouquette*, 21 Mo. 233; *McDonald v. Schneider*, 27 Mo. 405; Taylor on Landlord & Tenant [2 Ed.] sec. 91; *Gas Co. v. San Francisco*, 9 Cal. 453; *Gaslight Co. v. City*, 46 Mo. 121; *Searcy v. Garnell*, 47 Ark. 269; *Tube Works Co. v. City*, 37 N. W. Rep. 761.

THOMAS, J.—This is an action of ejectment for the recovery of the possession of lot 55, of the commons of the city of St. Ferdinand, county of St. Louis. The parties stipulated as follows: "It is agreed for the purpose of the trial of this case, that lot number 55 in controversy is a lot of the common of St. Ferdinand; that the inhabitants of the village of St. Ferdinand claimed and held said common under a concession from the Spanish government, made about 1796; that said claim and concession were subsequently confirmed by the authorities of the United States government, about the year 1815, and was subsequently surveyed under authority of the act of congress of June 13, 1812, by officers of the United States, as survey 1202, for said inhabitants, and that such survey and confirmation have been duly recorded."

It further appears from the record in the case, that St. Ferdinand was incorporated by the county court of the county of St. Louis, on the thirteenth day of May, 1829, under the name of "The inhabitants of the town of St. Ferdinand" under and by virtue of the general statutes of the state. The legislature of this state passed an act, approved March 14, 1835, by the first section of which certain parties (naming them) were appointed "trustees of the school lands and lots of village a Robert." Sections 2, 3, 4, 5, 6, 7, 8 and 9 of this act prescribed the duties of such trustees and provided that they should have power to sell, lease or

otherwise dispose of all school lands and lots belonging to said village, by giving sixty days' notice, and to use the interest of the proceeds realized from such lease or sale in maintaining "a school or schools in or near said village."

By the tenth section of the act, Michael Castello, Samuel McGill, Joseph Aubuchon, Gabriel J. Aubuchon, Louis Ouvre, Hyacinthe Dehetre and Antoine Dehetre were appointed trustees of the school lands, and lots, common-field lots and common of the village of St. Ferdinand.

Section 11 of the act is as follows: "The trustees, appointed in the next preceding section, shall have the same powers in relation to said village of St. Ferdinand, as those appointed by this act for the village a Robert, and be governed in all respects and subject to all liabilities in relation to the schools and school lands, out lots, common-field lots and common of the said village of St. Ferdinand as the aforesaid trustees of the village of a Robert, and shall moreover have power to settle and compromise privately with all persons settled on any school lot, out lot, common-field lot or part of the common of said village of St. Ferdinand or with any person setting up claim to any school lot, out lot, common-field lot, or part of the common of said village."

By an act approved February 3, 1837, James Music, Samuel McGill, Elza H. Rose, Anthony Molly and John Murphy were appointed trustees of the school lands and lots of the town of St. Ferdinand, with "power to sell, lease or otherwise to dispose of all the school lands and lots belonging to said village, and out of the proceeds to erect schoolhouses and to loan the remainder and apply the interest to the maintenance of schools in or near said town." Section 10 is as follows: "All laws or parts of laws coming within the purview of this act shall be, and the same are, hereby repealed."

On the nineteenth day of June, 1843, the county court of · St. Louis county again made an order incorporating said village under the name of "The inhabitants of the town of St. Ferdinand," upon a petition of the inhabitants thereof.

November 2, 1844, the following lease was executed, which was recorded February 8, 1845, viz.:

"This indenture made by and between the trustees of the town of St. Ferdinand, in the county of St. Louis, of the first part, and Miss Mary Lyons, an inhabitant in said town, of the second part, witnesseth: That the party of the first part, for and in consideration of the sum of $4.17, now paid by the party of the second part, and of the rents and covenants hereinafter expressed, to be paid and performed by the party of the second part, and her legal representatives, has granted, leased and let to farm, and does hereby grant, lease and let to farm unto the said party of the second part, and her heirs, executors, administrators and assigns, that certain lot of land, situated in the common of the said town of St. Ferdinand, containing thirty and nine-tenths acres, more or less, and being lot number 55 as marked and designated on the recognized plat of survey of the said common. To have and to hold the said lot of land unto the said party of the second part, to her heirs, executors, administrators and assigns, for and during the term of one thousand years, fully to be completed and ended. Which lot of land is estimated and agreed to be worth the sum of $139.05. And the said party of the second part, for herself, her heirs, executors and administrators, doth covenant that she will pay to the party of the first part, semi-annually, at the end of every half year, counting from the date hereof, the sum of $4.17, being six per cent. upon the estimated value of said lot, being the half-yearly rent for the said lot which is hereby reserved as a rent, chargeable upon said lot, and upon the said party of the second part, and

upon all persons who may claim or possess the same under her.

"And it is distinctly understood and agreed, and it is a condition of this lease, that, if the rent reserved shall, at any time, be and remain in arrear and unpaid for one entire half-year, the said party of the first part may, by a resolution of the board, or other authentic act in writing, declare the said lease forfeited and at an end; and from thenceforth this indenture shall be utterly null and void; and the party of the first part may take immediate possession of the premises.

"In witness whereof the said parties have executed this indenture, that is to say, the party of the first part, by affixing its corporate seal, and the signature of the chairman of the board of trustees and the party of the second part, by affixing her own hand and seal, this second day of November, A. D. 1844.

"By the order of the board,

"( L. S.)          Jas. L. Holliday, Chairman.

her

"Mary   ×   Lyons   [ Seal.] "

mark.

"State of Missouri, )
                    } ss.
"County of St. Louis. )

"Be it remembered that on this nineteenth day of November, in the year 1844, personally came before me, the undersigned, a justice of the peace, within and for the county of St. Louis aforesaid, James L. Holliday and Mary Lyons, who are personally known to me to be the persons whose names are subscribed to the foregoing instrument of writing, as having executed the same, and acknowledged the same to be their act and deed for the purposes therein contained.

"Taken and certified the day and year aforesaid.

"James Castello,

"Justice of the Peace."

Mary Lyons conveyed the lot in controversy to William Gilker by quitclaim deed, dated May 15, 1850.

The defendants in this case are the tenants of Gilker.  This is their title to the property.

By an act of the general assembly, approved February 11, 1857, the town of St. Ferdinand was declared to be a body politic under the name of "The City of Ferdinand."  This act authorized the city council of St. Ferdinand to sell and convey all lands of the city, and especially "all lands embraced within United States survey, number 1202."  The city of St. Ferdinand on the fifth day of August, 1880, conveyed, by quitclaim deed, to Erastus Wells, the plaintiff herein, a large number of lots in United States survey, number 1202, and in the city commons, including the one in dispute here, aggregating twelve hundred and one-fifth acres. This constituted plaintiff's title.

Defendants claimed that the above lease was executed in pursuance of an ordinance of the town passed in 1844, but that the ordinance had been lost.  They introduced evidence tending to prove the existence of the ordinance and its loss, and then the court permitted witnesses to testify, over plaintiff's objections, to the contents of the ordinance.  The ordinance provided that the commons should be leased to the inhabitants thereof for one thousand years, reserving rent equaling six per cent. per annum of the value of the land leased.

The trial was had before the court, and judgment went for defendants, and plaintiff has appealed.  The further facts presented by the record, necessary to an understanding of the case, will appear as we proceed in the disposition of the points urged before us for a reversal of the judgment of the trial court.

I.   The first contention is that the board of trustees of the town of St. Ferdinand had no power, in the year 1844, to make or authorize the making of the lease from them to Mary Lyons, dated November 2, 1844.  This lease was read in evidence, over the objection of respondent, and he duly saved his exception.

Appellant contends: *First.* That this lease is invalid and inoperative as against the town, because the board of trustees, elected after and under the incorporation of June 19, 1843, had no authority to execute it; but the power to sell or lease the commons of the town was vested alone in "the trustees, or the successors of the trustees, of the school lands and lots, common-field lots and common of the village of St. Ferdinand," appointed by the act of the general assembly, approved March 14, 1835. *Second.* That the incorporation of the town, of June 19, 1843, was void, because the county court did not proceed first to declare the dissolution of the incorporation of May 13, 1829, but proceeded to incorporate the town, completely ignoring the former incorporation.

These points, in our opinion, are not well taken. The first is predicated on a misconception of the *status* of affairs in 1843. We hold that the act of March 14, 1835, was repealed by the act of February 3, 1837. We will remark here that there is a hiatus in the evidence as to the *status* of the incorporation of this town from 1829 to 1843. The probability is that during that period the town was small, and the town government slept in innocuous desuetude,—remained in abeyance as it were. At all events, the legislature saw proper, in 1835, to interpose and appoint trustees, not of the town, it must be noted, but "of the school lands and lots, common-field lots and common of the village," upon whom was conferred the same power as was by the same act conferred on the trustees of the school lands and lots of the village of a Robert. It is manifest that the authority of the trustees for the lands of the village of St. Ferdinand was by the act extended to objects never intended to be included. The first section of the act appoints "trustees of the school *lands and lots* of the village of a Robert," whereas the tenth section appoints trustees of the school lands and lots, common-field lots and common of the village of St. Ferdinand." The latter trustees are given the same powers as the first are clothed with,—that is,

to lease or sell the lands, and from the income of the proceeds maintain *schools*.

It seems clear that the legislature did not intend to include the commons of St. Ferdinand in the act named, though the letter of the act does include them. The first section of the act referring to the village of a Robert includes, in letter and spirit, "school lands and lots" only, and the subsequent sections, providing for the lease or sale of the lands, for the maintenance of schools, show unequivocally that the general assembly was legislating and intending to legislate in regard to schools and school lands alone. By some unexplained circumstance, when it comes to legislating for St. Ferdinand, the trustees appointed are for "school lands and lots, common-field lots and common;" but the *power* conferred on these trustees is the same as that conferred on "the aforesaid trustees of the village of a Robert," and that was simply to sell or lease "*school lands and lots*" *to maintain schools*.

That there was a mistake made in this act in appointing "trustees of the common-field lots and common" of St. Ferdinand, manifestly appears by the subsequent act of February 3, 1837. The first section of this last act appoints a new board of "trustees of the *school lands and lots*" of St. Ferdinand, using the exact language of the first section of the act of 1835, appointing trustees for the village of a Robert. The other sections conf  power on the trustees to sell or lease *these* lands to maintain schools, thus confirming our view that the scope of the letter of the act of 1835 was broader than was intended, and this last act was passed to declare the legislative intent of the former act. But, be this as it may, we think that the act of 1835, so far as it related to the village of St. Ferdinand, was repealed by the tenth section of the act of 1837. It is important to note the peculiar phraseology of this section. It is this: "All laws or parts of laws *coming within the purview of this act* shall be and are hereby repealed." The

repealing clause generally repeals the laws *inconsistent with* the later statute. Here the "laws or parts of laws coming within the purview of the act" are repealed.

We presume it will not be claimed that the act of 1837 did not repeal the act of 1835, at least so far as "the school lands and lots" of St. Ferdinand are concerned. If the act of 1837 did not have the effect we think it had, the result would be that the legislature intended to appoint one set of trustees to take charge of, manage, sell or lease "the school lands and lots," and another set to manage, sell or lease "the common-field lots and common" of the village of St. Ferdinand. We cannot think for a moment that such result was intended. It is plain to us that the act of 1835, so far as it related to the village of St. Ferdinand, came "within the purview of the act" of 1837, and was, therefore, repealed by the tenth section of the latter. This seems to us to be a common-sense interpretation of these acts. The act of 1835, so far as it related to the village of St. Ferdinand, being repealed by the act of 1837, the trustees "of the common-field lots and common" of St. Ferdinand were not in office in 1843 and 1844, and the trustees appointed by the act of 1837 having authority only over the *school lands*, the trustees of the town were left with the sole power to manage, sell or lease the commons.

But, in the second place, appellant denies the authority of the trustees of this town elected in 1844 to lease the commons, because, he says, there was an existing incorporation of the town, originating May 13, 1829, at the time of the incorporation of June 19, 1843, and the court had no power to incorporate until it disincorporated under sections 26 and 27 of the act in regard to the incorporation of towns approved March 11, 1835. R. S. 1835, p. 604.

We are unable to perceive any force in this point, because the name and powers of the town under the orders of incorporation of May 13, 1829, and June 15,

1843, are substantially the same, and if the town was duly incorporated in 1843 a new order of incorporation giving it the same name and powers would certainly not have the effect to wholly destroy its corporate existence.   Appellant makes a long argument to show that the county court could disincorporate the town only in a certain way, pointed out by sections 26 and 27 of the act of 1835, *supra*, and that. is by giving notice, etc., and yet the effect of the argument is that the town did in fact become disincorporated because the court ordered an incorporation when one already existed.   It seems to us this course of the county court "doubled and twisted" the incorporation, and made it firm. It is not important *when* the town was incorporated, but the question is, was it an incorporated town in 1844 when it undertook to lease the lot in controversy to Mary Lyons?  There is no question in our minds that it was so incorporated at that time.   We may infer that the new order of incorporation made in 1843 was the result of the lapse of the old incorporation by non-user.   It is unimportant, however, to inquire why this new order of incorporation was made.   But there is other evidence in the record that this town had a corporate existence. It performed the functions of a town government from 1843 to 1857, when the legislature incorporated it as a city, and by this act the existence of a *town* government, then, is clearly and unequivocally recognized in several sections.   If the town was an incorporated town in 1857, it must have had its corporate existence as far back at least as 1843 ; for the record is silent as to any other act or order of incorporation till the passage of the act of February 11, 1857.

We take it, then, that the town of St. Ferdinand was a duly incorporated town from and after June 19, 1843.

II.   In the second place we will notice the objections and exceptions to the admission of evidence.

Respondents were permitted to introduce parol evidence of the contents of an ordinance of this town passed in 1844, under which the lease in question was executed. The contents of a lost record may be proved by parol. *Parry v. Walser, Adm'r*, 57 Mo. 169.

But it is argued that the evidence of the existence and loss of the ordinance was not sufficient to authorize the reception of secondary evidence of its contents. This evidence was addressed to the court, and by admitting the secondary evidence the court must have found that the ordinance did exist, and that it was lost. Where there is substantive evidence to sustain such finding of the trial court, we will defer to it, and not be disposed to weigh the evidence, but in this case we think the evidence establishes very clearly the existence of the ordinance and its loss, and the court committed no error in permitting defendants to prove its contents.

III. Another ground urged for a reversal of the judgment in this case is that the lease from the trustees of the town of St. Ferdinand to Mary Lyons is defective and invalid; that there is no proof either on the face of the instrument or by evidence *aliunde* that it was executed in compliance with any proper authority, and that said lease on its face purports to be the individual act of James L. Holliday, and not that of the town. We do not think that the record sustains this contention. The lease purports on its face to be "made by and between the trustees of the town of St. Ferdinand, in the county of St. Louis, of the first part, and Miss Mary Lyons" of the second part; the rent, by its express terms, is payable to the party of the first part; the town has power to declare a forfeiture for non-payment of rent, and the lease then concludes thus:

"In witness whereof the said parties have executed this indenture; that is to say, the party of the first part by affixing its corporate seal and the signature of the chairman of the board of trustees, and the party of the

second part by affixing her own hand and seal this second day of November, A. D. 1844.

"By order of the board.

"( L. S.)          JAS. L. HOLLIDAY, Chairman.

                         her

"MARY  ×  LYONS.          [ Seal.]"

                    mark.

As we have seen, the evidence shows that there was in 1844 an ordinance of this town passed to lease the commons for one thousand years. It was also proved that Jas. L. Holliday was the chairman of the board of trustees at that time, and his signature to the lease was genuine. Was this lease, under this state of the evidence, valid, is the question we must now answer. The act of December 22, 1824 ( R. S. 1825, sec. 1, p. 211 ), provides : "That when any city, town or village in this state hath a common annexed to it * * * the trustees or body corporate * * * may regulate the enjoyment of said commons, etc. * * * They may lease the said commons, reserving a yearly rent which shall be appropriated by the trustees or body corporate for the benefit of the commoners," etc. This act was continued in force by a special provision of the laws of 1835, concerning revision of the laws ( R. S. 1835, sec. 34, p. 385, clause 9 ), and it was still in force in 1844. The authority of the trustees of the town to make this lease seems to be plenary. *Carondelet v. Lannan*, 26 Mo. 461. Did they make it ? That is the question.

A deed executed by a town or city, regular on its face, under the corporate seal, for a part of its commons is *prima facie* evidence that all the prerequisites of the law authorizing the sale have been complied with. *Schwartz v. Page*, 13 Mo. 603 ; *Reilley v. Chouquette*, 18 Mo. 220 ; *Tigh v. Chouquette*, 21 Mo. 233 ; *Chouquette v. Barada*, 33 Mo. 249. The court in the latter case says : "The city of Carondelet having power to dispose of its common, the deed is presumed to have been

executed in pursuance of that power, and it was unnecessary for the plaintiffs to show special authority by resolution or ordinance." Besides this presumption, however, in favor of this lease, the proof shows that the board of trustees of the town authorized it by resolution or ordinance, and the town received the rents from 1844 to 1880.

Is the lease in question in due form? We think it is. In the case of *McDonald v. Schneider*, 27 Mo. 405, a lease for nine hundred and ninety-nine years had been authorized by the board of trustees, and was executed in the name of the trustees of the town of St. Charles, and was signed by the clerk of the board of trustees, and had the corporate seal attached. Judge SCOTT, speaking for the court, said : " We do not see the force of the objections to the deed of lease made by the trustees of the town of St. Charles to Wardlow. It is under the seal of the corporation. The common seal is proved. It is also shown it was affixed by the clerk of the board of trustees, who was authorized thereunto by ordinance. The attesting clause is nearly in the language required by law. Angell & Ames, sec. 225."

It is claimed that the acknowledgment of this lease by Holliday is defective and void, because it does not show the capacity in which he acted. It is not necessary for us to decide that this acknowledgment is good or bad. The lease was recorded February 8, 1845, more than forty years prior to the time it was introduced in evidence. Mary Lyons, and those deriving title from her, have claimed and enjoyed the property under the lease continuously since its execution, and it was admissible in evidence under the provisions of sections 2305 and 2310, Revised Statutes, 1879. Section 2305 was first enacted in 1847, and has continued in force ever since, and is still in force. It provides : " That the records heretofore made by the recorder of the proper county, by copying from any deed of conveyance. deed of trust, mortgage or copy of a will or other instrument of writing

that has neither been proven nor acknowledged, or which has been proven or acknowledged, but not according to the law in-force at the time the same was done, shall, from and after the passage of this act, impart notice to all persons of the contents of such instruments; and all subsequent purchasers and mortgagees shall be deemed to purchase with notice thereof."

And section 2310, adopted for the first time in 1855, provides that when a deed or other instrument of writing affecting real estate has been recorded for ten years, and the real estate has been claimed and enjoyed through such deed or other instrument for a period of ten consecutive years, such deed or instrument, or a certified copy thereof, shall be *prima facie* evidence of its execution and of its genuineness at the time of record.

We hold there was *prima facie* evidence of the execution and genuineness of the lease in question under those statutory provisions, and the plaintiff having purchased in 1880 is affected with notice of its contents. *Smith v. Madison,* 67 Mo. 694; *Crispen v. Hannavan,* 72 Mo. 548; *Wilson v. Albert,* 89 Mo. 537; *Hoge v. Hubb,* 94 Mo. 489. We do not think the legislature by the charter of the city of St. Ferdinand of 1857 intended to authorize the city to sell, nor that the city did sell, to plaintiff the title to these commons freed from the lease of 1844. The deed to plaintiff is perfectly consistent with the existence of the lease. It is a quitclaim, in the first place, and, in the second place, the plaintiff paid $10,000 for the property, which, the proof shows, was about one-twelfth of its real value. Hence, it is reasonable to presume that the city intended to sell, and the plaintiff intended to buy the fee in the land subject to this lease.

We were informed by counsel, in the oral argument before us, that this was a test case to decide the title to the twelve hundred acres of land included in plaintiff's deed, which the evidence shows is worth from $100,000 to $120,000, and hence we have been more prolix in the

discussion of the questions involved than the difficulty of their solution apparently warranted.

We feel that every principle of justice and fair dealing requires that the title to this twelve hundred acres of land acquired by the various parties by leases executed under ordinances of this town in 1844, and held and improved by the lessees, and acquiesced in by the town and city for thirty-five years before any dispute arose at all, ought not be invalidated, and the owners turned out of their homes, especially in favor of one who bought the property at a sum very much below its true value, and who must have had full knowledge, both actual and constructive, of the claimants' title. And our conclusion of the whole matter is, that plaintiff's claim to the property against the lease in this case has no merit, either in law or equity, and the judgment of the lower court is affirmed. All of this division concur.